UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TEGIN A. H.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:25-cv-6172-GJL

SOCIAL SECURITY DISABILITY APPEAL ORDER

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Magistrate Judge Rule 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 5. This matter has been fully briefed. *See* Dkts. 14, 15, 16.

Having considered the Administrative Record (AR) and all memoranda, the Court concludes that the Administrative Law Judge (ALJ) erred in evaluating certain medical opinion evidence. Accordingly, this matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner of the Social Security Administration for further proceedings consistent with this Order.

//

## I. PROCEDURAL HISTORY

On May 7, 2019, Plaintiff filed his application for Title XVI Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 1381(a). AR 103. His claim was denied initially on November 6, 2019, and upon reconsideration on March 3, 2020. AR 103, 116. On February 1, 2023, ALJ Ronald D. Lahners issued a decision concluding that Plaintiff was not disabled. AR 31. The Appeals Council denied Plaintiff's request for review on October 20, 2023, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1.

Plaintiff then filed a Complaint with the United States District Court for the Western District of Washington on December 21, 2023. AR 1331. By Order entered February 23, 2024, United States Magistrate Judge S. Kate Vaughan reversed and remanded the matter pursuant to a stipulation by the parties.[1] AR 1334–36. The Appeals Council remanded the matter on November 6, 2024. AR 1340.

The matter came on for another hearing on August 25, 2025, before ALJ Mark Triplett (the ALJ), who entered a decision, once again, concluding that Plaintiff was not disabled on August 29, 2025. AR 1227–1251. On January 22, 2026, Plaintiff filed another Complaint seeking judicial review of the ALJ's decision. Dkt. 9. Defendant filed the sealed Administrative Record in this matter on March 23, 2026. Dkt. 11.

## II. BACKGROUND

Plaintiff was born June 4, 1989, and was eighteen years old on July 31, 2007, his alleged date of disability onset. AR 103. Plaintiff has at least the equivalent of a high school education. AR 456, 544. According to the ALJ, Plaintiff suffers from the severe impairments of: depressive

---

[1] The stipulation provided that the "case be reversed and remanded to the Commissioner of Social Security for further administrative proceedings with respect to Plaintiff's application for [SSI] under Title XVI of the Social Security Act." AR 1336.

disorder; anxiety disorder; post-traumatic stress disorder; personality disorder; attention deficit hyperactivity disorder; somatic symptom disorder; Ehlers-Danlos syndrome; and postural orthostatic tachycardia syndrome. AR 1230. The ALJ, however, found that Plaintiff was not disabled because he had the following Residual Functional Capacity (RFC) through his Date Last Insured (DLI) to:

> perform light work as defined in 20 CFR 416.967(b) except [Plaintiff] can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] can tolerate occasional exposure to atmospheric conditions as defined in Selected Characteristics of Occupations. [Plaintiff] can tolerate occasional exposure to workplace vibration. [Plaintiff] can understand, remember, and carry out simple instructions and make simple work-related decisions. [Plaintiff] can tolerate occasional interaction with the general public. [Plaintiff] requires regular work breaks at 2-hour intervals.

AR 1234.

## III. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

Plaintiff argues that the ALJ erred in evaluating: (1) certain medical opinion evidence; (2) his subjective symptom testimony; and (3) his RFC. Dkt. 14 at 2.

### A. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in evaluating certain medical opinion evidence. Dkt. 14 at 3–7.

For applications filed after March 27, 2017, in evaluating medical opinion evidence, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s) or prior administrative medical finding(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[2] Rather, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* The critical factors in an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id.* at § 416.920c(c)(1). A medical opinion is more "supportable," and therefore more persuasive, when the sources provide ample relevant "objective medical evidence and supporting explanations" for their medical opinion. *Id.* "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also id.* at § 416.920c(c)(2).

Critically, an ALJ must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

//

//

//

---

[2] The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff's application was filed after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

1. <u>Dr. Wingate</u>

First, Plaintiff argues that the ALJ erred in evaluating Dr. Wingate's opinions. Dkt. 14 at 3–4. Dr. Wingate conducted a Psychological/Psychiatric Evaluation of Plaintiff on May 17, 2019, and October 17, 2022. AR 431, 1219.

In Dr. Wingate's 2019 opinion, she opined that Plaintiff has "marked" limitations in his ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; maintain appropriate behavior in a work setting; and complete a normal workday and work week without interruptions from psychologically based symptoms. AR 433. In turn, Dr. Wingate opined that Plaintiff had an overall "marked" severity rating due to his mental limitations. AR 434. In 2022, Dr. Wingate opined that Plaintiff had the same "marked" limitations that she opined in 2019, and also found that Plaintiff had a "marked" limitation in his ability to "communicate and perform effectively in a work setting." *Cf.* AR 434, 1221. In turn, Dr. Wingate, once again, opined that Plaintiff had an overall "marked" severity rating due to his mental limitations. AR 1222.

The ALJ found Dr. Wingate's opinions were not persuasive. AR 1241–42. First, the ALJ found that Dr. Wingate's 2022 opinion was "completely inconsistent with the largely normal findings at the previous exam of [Plaintiff by Dr. Wingate in 2019] and [Dr. Wingate] provided no explanation for the [2022] opinion." AR 1241. The ALJ also found that "[t]he overall record shows that aside from some occasional brief periods of increased symptoms, [Plaintiff] has otherwise received treatment showing stability, he is able to seek care and advocate for himself

for a variety of resources,[3] and has many normal brief psychiatric/mental status exams of record." AR 1242.

To the contrary, Dr. Wingate's 2022 opinion regarding "marked" limitations were based upon her clinical observations of Plaintiff at the prior "DSHS psychological evaluation by [Dr Wingate] on 5/17/19." AR 431–34, 1219. At the 2019 appointment, Plaintiff's mood was noted as "[m]ildly dysphoric" despite being "very talkative[.]" AR 434. In turn, Dr. Wingate noted Plaintiff's Beck Anxiety Inventory (BAI) Score of "40" which fell in the "severe" range, and diagnosed Plaintiff with "Major Depressive Disorder, recurrent, severe" and "Post Traumatic Stress Disorder, chronic" based upon Plaintiff's reports, and Dr. Wingate's own clinical observations of Plaintiff at the 2019 evaluation. AR 433–34. The ALJ does not acknowledge these abnormal findings from the 2019 evaluation when considering Dr. Wingate's 2022 opinion. AR 1241.

Moreover, despite finding that Plaintiff has "received treatment showing stability" and identifying "many normal brief/psychiatric mental status exams of record[,]" the record indicates that Plaintiff's mental health history is less straightforward than the ALJ's analysis of Dr. Wingate's opinions would suggest. AR 1242. For instance, the ALJ contends that Exhibit B20F supports a finding of "many normal brief psychiatric/mental status exams of record[,]" but those medical records are not from "psychiatric/mental status exams" as the ALJ contends, but derive from Plaintiff seeking treatment with Olympia Family Med or Immediate Care for "Bronchitis (Primary Dx); Skin Infection; Celiac Disease (HCC); [and] Ehlers-Danlos, hypermobile type

---

[3] Plaintiff's ability to "seek care and advocate for himself for a variety of resources" is not inconsistent with Dr. Wingate's opinion that Plaintiff has marked limitations in his ability to : perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; maintain appropriate behavior in a work setting; or complete a normal work day or work week without interruptions from symptoms. AR 434, 1221.

(HCC)[,]" AR 1610, "[f]ever" and "[a]cute viral bronchitis, AR 1612, "[s]creening for cervical cancer[,]" AR 1618, "[p]olyarthralgia, Seronegative (Primary Dx); Gluten intolerance; Abdominal bloating; [w]eight gain; [a]cute muscle weakness; [s]creening for diabetes mellitus." AR 1621; *see also Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (holding that "substantial evidence does not support" the ALJ's "second reason for rejecting [the doctor]'s opinion [because it] rests on an inference that cannot reasonably be drawn from the record"; just as "no reasonable person would expect a podiatrist seeing a patient who complains of foot problems to thoroughly examine the full range of that patient's hearing, it is unreasonable to expect [the claimant's] examining physicians [to] under[take] a thorough range of motion of [the claimant's] right thumb.").

Moreover, in making this finding, the ALJ ignored appointments within Exhibit B20F where Plaintiff was seen for mental health treatment; for instance, records from March 16, 2023, indicating that Plaintiff was seen for "post-traumatic stress disorder (primary DX); [m]oderate episode of recurrent major depressive disorder (HCC);" and recounting Plaintiff's hospitalization for "suicidal ideation" in February 2023. AR 1633–34. The ALJ also entirely omitted Exhibit B17F from his consistency analysis, but those records, from "Simply Thrive Psychotherapy" are entirely consistent with Dr. Wingate's opined limitations, and more accurately reflect the waxing and waning of Plaintiff's mental health symptoms. AR 1137–1218.[4]

Indeed, despite Plaintiff's report (and the ALJ's finding) "that in 2020, [Plaintiff] made progress with his mental health, started a line of credit, got medical appointments and found a dentist[,]" AR 1240, records from August 28, 2020, indicate that Plaintiff displayed "[v]ery rapid

---

[4] These records indicate that, at intake, Plaintiff "spoke at a quick pace with frequent tangents, but thought patterns were logical and speech sounds were normal. His mood was anxious and slightly depressed, but he was eager to continue with the intake and very present during therapy." AR 1139. Subsequent records from Simply Thrive indicate that Plaintiff's "mood was anxious and fearful, with a tearful and broad affect." AR 1141.

speech . . . [and] seems almost manic?" AR 1754. In June 2021, Plaintiff reported "increased suicidal ideation in the past week due to pain." AR 1146. Likewise, in 2023, Plaintiff, as the ALJ acknowledged, "sought emergency care in February 2023 for suicidal ideation[,]" and "endorsed significant symptoms of depression and anxiety." AR 1242.

In turn, Plaintiff "was voluntarily hospitalized with a mental health intake February 15, 2023[,] and [was] discharge[d] on February 21, 2023." *Id.* As the ALJ notes, Plaintiff "had findings on exam while hospitalized such as sad and depressed affect, feeling hopeless and suicidal." AR 1242, 1945. The ALJ nonetheless, observed that, while hospitalized, Plaintiff "reported his medication was really helping and denied side effects despite his symptoms"; the Court observes that—despite alleging that his medication was "really helping"—Plaintiff was hospitalized for suicidal ideations when he made this assertion. AR 1242, 1945.

It has long been established in this jurisdiction that, in the context of mental health, "[t]he fact that symptoms wax and wane in the course of treatment is to be expected; it does not create an inconsistency." *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (internal quotation marks and citation omitted). For this reason, the Court concludes that the ALJ's consistency findings, that "aside from some occasional brief periods of increased symptoms," Plaintiff has "otherwise received treatment showing stability" and "many normal brief psychiatric/mental status exams of record" themselves, are not supported by substantial evidence.

Finally, to the extent the ALJ made a supportability finding regarding Dr. Wingate's opinions,[5] the Court concludes that finding was not supported by substantial evidence. As

---

[5] Defendant argues that "the Ninth Circuit has affirmed an ALJ's assessment of a medical opinion where the ALJ addressed only one of the supportability and consistency factors." Dkt. 15 at 5 (citing *Woods*, 32 F.4th at 793 n.4; *Allen v. Kijakazi*, No. 22-35056, 2023 WL 2728857, at *1 (9th Cir. Mar. 31, 2023)). Defendant's interpretation of footnote four in *Woods* is inapposite. While the standard of appellate review may assess the materiality of error, it cannot be used to countenance it. Defendant's interpretation of *Woods* suggests an ALJ may simply disregard analysis

discussed, *supra*, Dr. Wingate's opinions were supported by her clinical observations of Plaintiff at her 2019 evaluation. AR 434, 1219–21. For these reasons, the Court concludes that the ALJ erred in evaluating Dr. Wingate's medical opinion evidence.

2. Harmless Error Analysis

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination of whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118–19 (citations omitted).

Here, the ALJ's error is not harmless because, had the ALJ properly considered the consistency of Dr. Wingate's opinions, Plaintiff's RFC may have changed, or the ultimate determination of disability may have changed. Moreover, the ALJ's consistency error may have been harmless had the ALJ also rejected Dr. Wingate's opinion on supportability grounds accompanied by a fulsome analysis. For these reasons, the proper disposition is to reverse and remand the matter for further proceedings. *See Molina*, 674 F.3d at 1115.

//

//

---

of one factor, supportability or consistency, entirely— and in turn, a reviewing Court may affirm the ALJ's decision— so long as the ALJ's analysis of the *analyzed* factor is supported by substantial evidence. This reading of *Woods* runs the risk of discouraging ALJ's from adhering to their regulatory mandate of explicitly addressing supportability *and* consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). To the contrary, an ALJ's articulation of their reasoning is actually one of "the most important factors" the Administration considers when determining "how persuasive" a medical opinion is, a necessary step in the Social Security evaluation process, and failing to make findings as to both factors would deprive reviewing Courts an opportunity to conduct meaningful review of the ALJ's analysis of medical opinion evidence. *Id.*

**B. Remaining Issues**

In light of the ALJ's harmful error in evaluating the medical opinion evidence, the Court need not consider Plaintiff's remaining arguments regarding the medical opinion evidence, his subjective symptom testimony, or his RFC, because, on remand, the ALJ is instructed to reconsider the entire Social Security evaluation process, including the medical opinion evidence and Plaintiff's RFC. *See* Social Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."); *Watson v. Astrue*, No. ED-CV-09-1447-PLA, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (concluding the RFC and hypothetical questions posed to the vocational expert at Step Five were defective when the ALJ did not properly consider physicians' findings).

## IV. CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** AND **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

Dated this 5th day of August, 2026.

Grady J. Leupold
United States Magistrate Judge